982 F.2d 526
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Daniel O'CONNOR; Kelly O'Connor, Appellants,
v.
AMERICAN CYANAMID COMPANY, a corporation, Appellee.
 No. 91-3495.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: July 13, 1992.
Filed: January 6, 1993.
 
 Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Daniel O'Connor and Kelly O'Connor appeal from the district court's[1] grant of summary judgment to American Cyanamid Company (ACC) in this diversity action. We affirm.
 
 
 2
 The O'Connors, who are brothers, applied Scepter brand herbicide to their fields in 1988. ACC manufactures and distributes Scepter. The application of Scepter allegedly damaged the O'Connors' 1988 soybean crop. The O'Connors sought compensation from ACC. During subsequent months, the O'Connors learned through ACC-produced literature, meetings with ACC representatives, and articles in agricultural magazines that there was a potential for carryover damage to 1989 corn crops from the 1988 Scepter application. In February 1989, the O'Connors and ACC entered into a settlement agreement for the alleged damages from the Scepter application; the O'Connors signed a release of liability and in exchange received checks totalling $48,382 from ACC. The O'Connors cashed the checks and have not returned the proceeds.
 
 
 3
 In the spring of 1989, the O'Connors planted a rotation corn crop on the same fields. The corn crop suffered growth damage, which the O'Connors alleged was caused by the carryover effects of the 1988 application of Scepter. The O'Connors sought compensation from ACC. When the parties could not agree on a settlement amount, the O'Connors brought an action in state court based on strict liability and breaches of express and implied warranties. ACC removed the case to federal court. After filing its answer, ACC moved to amend the answer to include the defense of release and compromise, based on the release signed by the O'Connors.
 
 
 4
 The district court granted the motion to amend the answer and granted summary judgment to ACC. The court held that the release "clearly released American Cyanamid from any and all damage to property whether known or unknown." The court also found that the unexpected consequences arose from injuries known to exist at the time the release was signed. Finally, the district court held that if the O'Connors had wished to preserve their right to recover future damages for the potential carryover effect of the Scepter application (which they had known were possible), the terms of the release should have reflected that intent.
 
 
 5
 In diversity cases, this court reviews the district court's conclusions of law, including its grant of summary judgment, de novo. See Spencer v. Kroger Co., 941 F.2d 699, 701 (8th Cir. 1991). We conclude that the district court properly granted summary judgment to ACC.
 
 
 6
 "A written release is nothing more than a contract by which the parties consent to a release of obligation. Since a release is of a contractual nature, however, the intentions of the parties must govern." Maryland Cas. Co. v. Delzer, 283 N.W.2d 244, 248 (S.D. 1979) (citations omitted). South Dakota law provides that a written contract supersedes all of the oral negotiations or stipulations which preceded or accompanied its execution. S.D. Codified Laws Ann. § 53-8-5 (1990). This statute is "substantive in character and not merely a rule of evidence." Northwestern Pub. Serv. Co. v. Chicago & N.W. Ry. Co., 210 N.W.2d 158, 160 (S.D. 1973). "It is also well settled that parol evidence is inadmissible to vary, contradict or add to a contract which has been reduced to a writing that is clear, definite and complete, and in the absence of fraud, mistake or accident, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract." Id. Because the language of the release is unambiguous, we conclude that the O'Connors' argument that additional representations allegedly made by ACC should be considered lacks merit. We also note that there is no indication of fraud, mistake, or accident here; the O'Connors knew that a potential for carryover damage existed at the time they signed the release.
 
 
 7
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable John Bailey Jones, Chief Judge, United States District Court for the District of South Dakota